UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| IN RE: RAILWAY INDUSTRY | ) |  |
| EMPLOYEE NO-POACH ANTITRUST | ) | Civil No. 2:18-MC-00798-JFC |
| LITIGATION | ) |  |
|  | ) | MDL No. 2850 |
| This Document Relates to: | ) |  |
| ALL ACTIONS | ) | Judge Joy Flowers Conti |
|  | ) |  |

## STATEMENT OF INTEREST OF THE UNITED STATES

SCOTT BRADY
 *United States Attorney*

JENNIFER R. ANDRADE
 *Assistant U.S. Attorney*
 *Chief, Civil Division*
 U.S. Courthouse and Post Office
 700 Grant St., Suite 4000
 Pittsburgh, PA  15219
 Tel: (412) 894-7354

MAKAN DELRAHIM
 *Assistant Attorney General*

ANDREW C. FINCH
 *Principal Deputy Assistant Attorney*
 *General*

MICHAEL F. MURRAY
 *Deputy Assistant Attorney General*

WILLIAM J. RINNER
 *Chief of Staff and Senior Counsel*

KRISTEN C. LIMARZI
NICKOLAI G. LEVIN
DOHA G. MEKKI
 *Attorneys*
 U.S. Department of Justice
 Antitrust Division
 950 Pennsylvania Ave. NW #3224
 Washington, DC  20530
 Tel: (202) 514-2886

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................... ii

INTEREST OF THE UNITED STATES ................................................... 1

BACKGROUND .................................................................................... 2

ARGUMENT ......................................................................................... 4

    I.    No-Poach Agreements Among Competitors Are *Per Se* Unlawful
        Unless They Are Ancillary To A Separate Legitimate Transaction
        Or Collaboration ................................................................. 4

    II.    Plaintiffs Adequately Pleaded A *Per Se* Claim Here .......................... 16

CONCLUSION .................................................................................... 17

CERTIFICATE OF SERVICE ............................................................... 19

i

# TABLE OF AUTHORITIES

## CASES:

*Arizona v. Maricopa County Medical Society*, 457 U.S. 332 (1982) ......................14

*AYA Healthcare Services, Inc. v. AMN Healthcare, Inc.*,
  2018 WL 3032552 (S.D. Cal. June 19, 2018) ............................................... 12, 13

*Blue Cross & Blue Shield United of Wisconsin v. Marshfield Clinic*,
  65 F.3d 1406 (7th Cir. 1995) .................................................................7

*Deslandes v. McDonald's USA, LLC*,
  2018 WL 3105955 (N.D. Ill. June 25, 2018).......................................... 12, 13, 14

*Eichorn v. AT&T Corp.*, 248 F.3d 131 (3d Cir. 2001) .......................... 11, 12,14, 17

*Hammes v. AAMCO Transmissions, Inc.*, 33 F.3d 774 (7th Cir. 1994) ...................6

*In re High-Tech Employee Antitrust Litigation*,
  856 F. Supp. 2d 1103 (N.D. Cal. 2012)..................................................9

*In re Insurance Brokerage Antitrust Litigation*, 618 F.3d 300 (3d Cir. 2010)..........5

*Leegin Creative Leather Products, Inc. v. PSKS, Inc.*, 551 U.S. 877 (2007)............5

*Lektro-Vend Corp. v. Vendo Co.*, 660 F.2d 255 (7th Cir. 1981) ............................10

*Los Angeles Memorial Coliseum Commission v. NFL*,
  726 F.2d 1381 (9th Cir. 1984) ..............................................................10

*Major League Baseball Properties, Inc. v. Salvino, Inc.*,
  542 F.3d 290 (2d Cir. 2008) ..................................................................11

*Northwest Wholesale Stationers Inc. v. Pacific Stationary & Printing Co.*,
  472 U.S. 284 (1985)..............................................................................5

*Palmer v. BRG of Georgia, Inc.*, 498 U.S. 46 (1990)...........................................6, 7

*Polk Brothers, Inc. v. Forest City Enterprises, Inc.*,
  776 F.2d 185 (7th Cir. 1985) ...............................................................10

*Rothery Storage & Van Co. v. Atlas Van Lines, Inc.*,
  792 F.2d 210, (D.C. Cir. 1986)....................................................... 10, 11, 13

*State Oil Co. v. Khan*, 522 U.S. 3 (1997) .............................................................5

*Texaco, Inc. v. Dagher*, 547 U.S. 1 (2006) .........................................................11

*United States v. Addyston Pipe & Steel Co.*, 85 F. 271 (6th Cir. 1898)................10

*United States v. Addyston Pipe & Steel Co.*, 175 U.S. 211 (1899) .........................10

*United States v. Brown*, 936 F.2d 1042 (9th Cir. 1991) ...........................................7

*United States v. Cadillac Overall Supply Co.*, 568 F.2d 1078 (5th Cir. 1978) .........7

*United States v. Cooperative Theatres of Ohio, Inc.*,
   845 F.2d 1367 (6th Cir. 1988) ...........................................................................6, 7
*United States v. eBay, Inc.*, 968 F. Supp. 2d 1030 (N.D. Cal. 2013) ................. 8, 13
*United States v. Goodman*, 850 F.2d 1473 (11th Cir. 1988) ....................................7
*United States v. Kemp & Associates*, 907 F.3d 1264 (10th Cir. 2018)....................7
*United States v. Koppers Co.*, 652 F.2d 290 (2d Cir. 1981)....................................7
*United States v. Reicher*, 983 F.2d 168 (10th Cir. 1992)...........................................7
*United States v. Suntar Roofing, Inc.*, 897 F.2d 469 (10th Cir. 1990) .....................7
*United States v. Topco Associates, Inc.,* 405 U.S. 596 (1972) .................................6
*Weisfeld v. Sun Chemical Corp.*, 210 F.R.D. 136 (D.N.J. 2002) .............. 14, 15, 17
*Weisfeld v. Sun Chemical Corp.*, 84 Fed. App'x 257 (3d Cir. 2004) ... 14, 15, 16, 17

## STATUTES:

15 U.S.C. § 1 ..........................................................................................................1, 5
28 U.S.C. § 517 ..........................................................................................................1

## OTHER AUTHORITIES:

Gregory J. Werden, *Antitrust Analysis of Joint Ventures: An Overview*,
   66 Antitrust L.J. 701 (1998)..................................................................................11
12 Herbert Hovenkamp, *Antitrust Law*, ¶2013b (3d ed. 2012) ...............................10
Robert H. Bork, *Ancillary Restraints and the Sherman Act*,
   15 Antitrust L.J. 211 (1959)..................................................................................11

## INTEREST OF THE UNITED STATES

The United States respectfully submits this statement pursuant to

28 U.S.C. § 517, which permits the Attorney General to direct any officer of the

Department of Justice to attend to the interests of the United States in any case

pending in a federal court.  The United States enforces the federal antitrust laws

and has a strong interest in their correct application.

The United States has a particular interest in this case because it follows the

enforcement action in *United States v. Knorr-Bremse AG, et al.*, No. 18-cv-747-

CKK (D.D.C. filed Apr. 3, 2018), in which the United States challenged as *per se*

unlawful under Section 1 of the Sherman Act, 15 U.S.C. § 1, a series of

agreements among defendants "not to solicit, recruit, hire without prior approval,

or otherwise compete for employees" (collectively, "no-poach agreements").

*Knorr-Bremse* Complaint, Doc. 1, at ¶¶ 2, 3, 6, 18, 32.  Defendants entered into a

consent decree enjoining them from entering into, maintaining, or enforcing any

such unlawful no-poach agreements.  *Knorr-Bremse* Final Judgment, Doc. 19,

Sections IV and V.

Courts have long held that customer- and market-allocation agreements

among competitors are *per se* unlawful.  No-poach agreements among competing

employers are a type of allocation agreement affecting a labor market.  As with

other allocation agreements, they are *per se* unlawful unless the facts show that

1

they are reasonably necessary to a separate, legitimate business transaction or collaboration among the employers.

Accordingly, the United States urges this Court to reject defendants' argument that *all* "no-poach antitrust cases are properly evaluated under [Section 1's] rule of reason" and not the *per se* rule.  Joint Motion To Dismiss The Consolidated Class Action Complaint, Doc. 124-1, at 1, 3-5.  Defendants' proposed categorical rule is unsupported by precedent and inconsistent with sound antitrust policy.

## BACKGROUND

This case involves alleged agreements among Defendants Knorr-Bremse AG, Westinghouse Air Brake Technologies Corporation ("Wabtec"), Faiveley Transport S.A., and their subsidiaries to "refrain from soliciting or hiring each other's employees without the consent of the current employer," which plaintiffs call "no-poach agreements."  Consolidated Class Action Complaint (Class Complaint), Doc. 88, at ¶¶ 1-5.[1]  Plaintiffs, "former employees of defendants," allege that defendants "are the largest suppliers of rail equipment used in freight and passenger rail applications" and had previously competed vigorously with each other in lateral hiring for employees by "soliciting and hiring employees from

---

[1] Wabtec acquired Faiveley Transport S.A. in November 2016.  Class Complaint ¶ 22.

other rail industry employers." *Id.* ¶¶ 1-2, 35-36.  This competition for employees previously benefitted those employees, plaintiffs allege, because it increased their "available job opportunities" and led to "better salar[ies] and other terms of employment." *Id.* ¶¶ 34-39.  Plaintiffs allege that since 2009, however, defendants "entered into no-poach agreements to eliminate competition among them for employees." *Id.* ¶¶ 3, 41.

Plaintiffs further allege that the "no-poach agreements were not reasonably necessary to any separate, legitimate business transaction or collaboration between the companies." *Id.* ¶ 41.  Rather, plaintiffs allege, the agreements "restrain[] competition for employees and disrupt[] the normal bargaining and price-setting mechanisms that apply in the labor market." *Id.* ¶ 40.  Accordingly, plaintiffs allege that the no-poach agreements "are *per se* violations of Section 1 of the Sherman Act." *Id.* ¶ 79.  Plaintiffs do not allege a claim under the rule of reason. *See id.*

Defendants moved to dismiss the claim, arguing that, under Section 1 of the Sherman Act, all "no-poach antitrust cases are properly evaluated under the rule of reason" instead of the *per se* rule.  Joint Motion To Dismiss the Consolidated Class Action Complaint, Doc. 124-1, at 1, 3-5.

## ARGUMENT

This Court should reject defendants' argument that, as a matter of law, all no-poach agreements must be analyzed under the rule of reason.  Defendants' broad legal rule is not supported by antitrust precedent and makes no sense as matter of antitrust policy.

Plaintiffs have alleged that defendants' no-poach agreements are naked restraints of trade that serve no purpose except for stifling competition.  These allegations parallel what the United States itself alleged in its enforcement action concerning the same underlying conduct, and they are sufficient to state a *per se* claim under Section 1 of the Sherman Act.

**I.     No-Poach Agreements Among Competitors Are *Per Se* Unlawful Unless They Are Ancillary To A Separate Legitimate Transaction Or Collaboration**

Agreements among competitors not to solicit or hire each other's employees harm competition in labor markets in the same way that agreements among them to allocate customers or divide product markets harms competition in those markets. Like other types of allocation agreements, no-poach agreements among competing employers are *per se* unlawful unless they are reasonably necessary to a separate legitimate business transaction or collaboration among the employers, in which case the rule of reason applies.

a.  Section 1 of the Sherman Act declares "contract[s] . . . in restraint of trade or commerce among the several States . . . illegal."  15 U.S.C. § 1.  The legality of many restraints is "analyzed under a 'rule of reason,' according to which the finder of fact must decide whether the questioned practice imposes an unreasonable restraint on competition, taking into account a variety of factors, including specific information about the relevant business, its condition before and after the restraint was imposed, and the restraint's history, nature, and effect."  *State Oil Co. v. Khan*, 522 U.S. 3, 10 (1997).

Yet the "rule of reason does not govern all restraints."  *Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S. 877, 886 (2007).  Rather, some "types of restraints" have "such predictable and pernicious anticompetitive effect, and such limited potential for procompetitive benefit, that they are deemed unlawful *per se*."  *Khan*, 522 U.S. at 10.  The "*per se* approach permits categorical judgments with respect to certain business practices that have proved to be predominantly anticompetitive."  *Nw. Wholesale Stationers Inc. v. Pac. Stationary & Printing Co.*, 472 U.S. 284, 289 (1985); *see In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 317 (3d Cir. 2010).

b.  Agreements among competitors to "divide markets" are *per se* unlawful.  *Leegin*, 551 U.S. at 886.  As the Third Circuit has explained, they are "paradigmatic examples" of *per se* unlawful agreements.  *Ins. Brokerage*, 618 F.3d

at 316.  The Supreme Court has also "reiterated time and time again that

'[agreements allocating markets among competitors] are naked restraints of trade

with no purpose except stifling of competition.'  Such limitations are *per se*

violations of the Sherman Act."  *Palmer v. BRG of Ga., Inc.*, 498 U.S. 46, 49

(1990) (per curiam) (quoting *United States v. Topco Assocs., Inc.*, 405 U.S. 596,

608 (1972)).

The prohibition against allocating or dividing markets extends to agreements

"between two competitors to refrain from seeking business from each other's

existing accounts."  *United States v. Cooperative Theatres of Ohio, Inc.*, 845 F.2d

1367, 1372-73 (6th Cir. 1988).  Such "customer allocation scheme[s]" are a

"classic example[]" of *per se* unlawful conduct.  *Id.* at 1371.  An agreement not to

compete for certain customers is manifestly anticompetitive because it forces the

allocated customer to "face[] a monopoly seller" rather than reap the benefits of

competition between sellers that would result in lower prices or better product

offerings.  *Hammes v. AAMCO Transmissions, Inc.*, 33 F.3d 774, 782 (7th Cir.

1994).  Thus, an agreement to "allocate customers among the conspirators" has

effects "almost identical to those of price-fixing and is treated the same by the

law."  *Id.*  Indeed, "[i]t would be a strange interpretation of antitrust law that

forbade competitors to agree on what price to charge, thus eliminating price

competition among them, but allowed them to divide markets, thus eliminating *all*

6

competition among them." *Blue Cross & Blue Shield United of Wis. v. Marshfield Clinic*, 65 F.3d 1406, 1415 (7th Cir. 1995) (emphasis added).

The *per se* rule applies to a customer-allocation agreement regardless of whether the agreement applies to new or existing customers, *Palmer*, 498 U.S. at 49-50; whether customers are divided geographically or on some other basis, *see United States v. Cadillac Overall Supply Co.*, 568 F.2d 1078, 1088 (5th Cir. 1978); or whether it "would only affect a small number of potential customers," *United States v. Kemp & Assocs.*, 907 F.3d 1264, 1277 (10th Cir. 2018) (citing *United States v. Reicher*, 983 F.2d 168, 170 (10th Cir. 1992)) (dictum).

The United States has criminally prosecuted many such customer- and market-allocation agreements as *per se* violations of Section 1.   *E.g.*, *Cooperative Theatres of Ohio*, 845 F.2d at 1372-73 (allocating movie-theater customers); *United States v. Brown*, 936 F.2d 1042, 1045 (9th Cir. 1991) (en banc) (allocating billboard sites); *United States v. Suntar Roofing, Inc.*, 897 F.2d 469, 473 (10th Cir. 1990) (allocating roofing customers); *United States v. Goodman*, 850 F.2d 1473, 1477 (11th Cir. 1988) (allocating customers in garbage disposal industry); *United States v. Koppers Co.*, 652 F.2d 290, 293 (2d Cir. 1981) (allocating territories in the sale of road tar); *Cadillac Overall Supply Co.*, 568 F.2d at 1090 (allocating customers of garment providers).

c.  Just as an agreement among competitors to allocate customers eliminates competition for those customers, an agreement among them to allocate employees eliminates competition for those employees.  As with other types of allocation agreements, an employee that is victim of an allocation agreement among employers cannot reap the benefits of competition among those employers that may result in higher wages or better terms of employment.  Furthermore, just as allocation agreements in product markets have almost identical anticompetitive effects to price-fixing agreements, *see* p. 6, *supra*, no-poach agreements among competing employers have almost identical anticompetitive effects to wage-fixing agreements:  they enable the employers to avoid competing over wages and other terms of employment offered to the affected employees.

For these reasons, courts have held that no-poach agreements among competitors in labor markets are *per se* unlawful in the same way that customer- and market-allocation agreements in product markets are *per se* unlawful.  In *United States v. eBay, Inc.*, 968 F. Supp. 2d 1030 (N.D. Cal. 2013), for example, the district court held that the United States adequately pleaded a *per se* violation by alleging a naked agreement between eBay and Intuit not to solicit or hire each other's employees.  The court denied a motion to dismiss, ruling that the alleged restraint was "a 'classic' horizontal market division" and that "[a]ntitrust law does not treat employment markets differently from other markets in this respect."  *Id.* at

8

1039-40.  The defendants ultimately entered into a consent decree enjoining the

unlawful agreement.  *See United States v. eBay, Inc.*, No. 12-CV-05869-EJD-PSG,

Final Judgment, Doc. 66, at 2 (N.D. Cal. Sept. 2, 2014).  Likewise, in *In re High-*

*Tech Employee Antitrust Litigation*, 856 F. Supp. 2d 1103, 1122 (N.D. Cal. 2012),

the court held that allegations of bilateral "Do Not Cold Call" agreements among

high-tech firms were sufficient to plead a *per se* violation of the Sherman Act.[2]

Naked no-poach agreements are *per se* illegal because they eliminate

competition in the same irredeemable way as agreements to allocate customers or

markets.  *See Department of Justice-Federal Trade Commission Antitrust*

*Guidance for HR Professionals*, at 4 (Oct. 2016) (*HR Guidelines*).[3]  As the leading

antitrust treatise puts it,  "[a]n agreement among employers that they will not

compete against each other for the services of a particular employee or prospective

---

[2] The United States also filed a complaint alleging these agreements were *per se* violations of the Sherman Act, and the conduct was enjoined pursuant to a consent decree.  *See* Complaint, Doc. 1, *United States v. Adobe Sys., Inc.*, No. 1:10-cv-01629, ¶ 35 (D.D.C. Sept. 24, 2010); Competitive Impact Statement, Doc. 2, at 2, 8-10 (D.D.C. Sept. 24, 2010); Final Judgment, Doc. 17, at 4 (D.D.C. Mar. 18, 2011); *see also* Complaint, Doc. 1, *United States v. Lucasfilm Ltd.*, No. 1:10-cv-02220, ¶ 23 (D.D.C. Dec. 21, 2010); Final Judgment, Doc. 6-1, at 4 (D.D.C. May 9, 2011).

[3] The Antitrust Division has announced that it would prosecute these cases criminally for "agreements that began after the date of that announcement [in October 2016], or that began before but continued after that announcement." Remarks of Principal Deputy Assistant Attorney General Andrew C. Finch (Jan. 23, 2018), *available at* https://www.justice.gov/opa/speech/principal-deputy-assistant-attorney-general-andrew-c-finch-delivers-remarks-heritage.

employee is, in fact, a service division agreement, analogous to a product division agreement" and is "generally unlawful *per se*" if not negotiated as part of a collective bargaining process.  12 Herbert Hovenkamp, *Antitrust Law*, ¶ 2013b at 148 (3d ed. 2012).

d.  If the facts show that no-poach agreements are reasonably necessary to a separate, legitimate business transaction or collaboration among the employers, they are not *per se* unlawful, and would instead be judged under the rule of reason. Under the "ancillary restraints doctrine," an agreement ordinarily condemned as *per se* unlawful is "exempt from the *per se* rule" if it is ancillary to a separate, legitimate venture between the competitors.  *Rothery Storage & Van Co. v. Atlas Van Lines, Inc.*, 792 F.2d 210, 224, (D.C. Cir. 1986) (Bork, J.).

"To be ancillary," an "agreement eliminating competition must be subordinate and collateral to a separate, legitimate transaction," and reasonably necessary to "make the main transaction more effective in accomplishing its purpose." *Id.* at 224, 227; *accord Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 335-38 (2d Cir. 2008) (Sotomayor, J., concurring); *Polk Bros., Inc. v. Forest City Enters., Inc.*, 776 F.2d 185, 188-89 (7th Cir. 1985); *L.A. Mem'l Coliseum Comm'n v. NFL*, 726 F.2d 1381, 1395 (9th Cir. 1984); *Lektro-Vend Corp. v. Vendo Co.*, 660 F.2d 255, 265, 269 (7th Cir. 1981); *United States v. Addyston Pipe & Steel Co.*, 85 F. 271 (6th Cir. 1898) (Taft, J.), *aff'd*, 175 U.S. 211

10

(1899); Gregory J. Werden, *Antitrust Analysis of Joint Ventures: An Overview*, 66 Antitrust L.J. 701, 705-09 (1998); Robert H. Bork, *Ancillary Restraints and the Sherman Act*, 15 Antitrust L.J. 211, 212 (1959).

Ancillary restraints are subject to the rule of reason. *Rothery Storage*, 792 F.2d at 224; *see also Salvino*, 542 F.3d at 338 (Sotomayor, J., concurring); *HR Guidelines* at 3 ("Legitimate joint ventures (including, for example, appropriate shared use of facilities) are not considered *per se* illegal under the antitrust laws.").[4]

*Eichorn v. AT&T Corp.*, 248 F.3d 131 (3d Cir. 2001), is a leading case on the application of the ancillary restraints doctrine to a no-poach agreement. In *Eichorn*, the seller of a company entered into a "no-hire" agreement with the buyer providing that the seller would not hire the company's employees for eight months. *Id.* at 136-137. The Third Circuit held that, because the no-hire agreement was an "ancillary" agreement "executed upon the sale of a corporation," it was properly analyzed under the rule of reason. *Id.* at 143, 145.

---

[4] The rule of reason also applies to agreements involving "core activity of [a] joint venture." *Texaco, Inc. v. Dagher*, 547 U.S. 1, 7 (2006). The ancillary restraints doctrine does not apply to *core* venture conduct, because that "doctrine governs the validity of restrictions imposed by a legitimate business collaboration, such as a business association or joint venture, on *nonventure* activities." *Id.* (emphasis added).

Following *Eichorn*, a district court recently reached a similar result in a case challenging a clause in McDonald's franchise agreements providing that a "[f]ranchisee shall not employ or seek to employ any person who is at the time employed by McDonald's, any of its subsidiaries, or by any person who is at the time operating a McDonald's restaurant." *Deslandes v. McDonald's USA, LLC*, 2018 WL 3105955, at *2, *7 (N.D. Ill. June 25, 2018). The court held that the *per se* rule was inapplicable because the plaintiff "alleged a horizontal restraint that is ancillary to franchise agreements for McDonald's restaurants" and ancillary "no-hire agreements . . . can have procompetitive effects." *Id.* at *7 (citing *Eichorn*, 248 F.3d at 144).[5]

The mere existence of a separate legitimate business transaction or collaboration among the defendants does not in and of itself mean that a *per se* claim must automatically be dismissed. Even in that situation, the ancillary restraints doctrine would not apply if the no-poach agreement was not reasonably necessary to achieve the benefits of the separate transaction or collaboration.

In *AYA Healthcare Services, Inc. v. AMN Healthcare, Inc.*, 2018 WL 3032552 (S.D. Cal. June 19, 2018), for example, the court held that plaintiffs

---

[5] The court nonetheless recognized that, "because a no-hire agreement is, in essence, an agreement to divide a market, the Court has no trouble concluding that a naked horizontal no-hire agreement would be a *per se* violation of the antitrust laws." *Deslandes*, 2018 WL 3105955, at *6.

sufficiently pleaded that no-poach restrictions in AMN Healthcare's subcontractor agreements were *per se* unlawful even though defendants were plausibly engaged in a joint venture. *Id.* at \*10-\*12, \*15. The complaint alleged that the no-poach restrictions were overly broad because they "last[ed] in perpetuity," even after dissolution of the joint venture, and thus were non-ancillary. *Id.* at \*15. The court stated that it was "unable to determine with certainty whether the restraints are ancillary to procompetitive business purposes, or 'so broad that part of the restraint suppresses competition without creating efficiency,'" and held that the proper mode of analysis would depend on what the evidence revealed. *Id.* (quoting *Rothery Storage*, 792 F.2d at 224). In any particular case, subsequent factual development may provide a basis for defendants to argue that the agreements are ancillary restraints and, if necessary, move for summary judgment on that basis.

e.  Defendants' argument for a categorical application of the rule of reason to no-poach agreements should be rejected. While courts are reluctant to create new *per se* categories, defendants are wrong to assert that application of the *per se* rule to no-poach agreements would create a new *per se* category. Joint Motion To Dismiss The Consolidated Class Action Complaint, Doc. 124-1, at 4. Market-allocation agreements have long been held *per se* illegal. As the *eBay* court explained, no-poach agreements among competitors are "a 'classic' horizontal market division," just in an "employment market" rather than a product market.

968 F. Supp. 2d at 1039-40; *see also Deslandes*, 2018 WL 3105955, at *6 (quoted above in note five).  The Supreme Court has made clear that the application of the *per se* rule does not depend on the amount of judicial experience with the particular "industry" at issue, but instead turns on the amount of experience "with the particular type of restraint challenged."  *Arizona v. Maricopa Cty. Med. Soc.*, 457 U.S. 332, 349 & n.19 (1982).  There is ample judicial experience with allocation agreements.  *See* pp. 5-7, *supra*.

Moreover, contrary to defendants' argument, Third Circuit precedent does not require the application of the rule of reason to all no-poach agreements.  While defendants cite *Eichorn*, and *Weisfeld v. Sun Chem. Corp.*, 210 F.R.D. 136 (D.N.J. 2002), *aff'd*, 84 Fed. App'x 257 (3d Cir. 2004), *see* Joint Motion To Dismiss The Consolidated Class Action Complaint, Doc. 124-1, at 4, neither case supports their broad legal rule.

*Eichorn* never purported to address the proper legal analysis for a naked no-poach agreement, which did not exist in the case.  Rather, *Eichorn* merely held that a no-hire agreement that was ancillary to the sale of a company was properly subject to the rule of reason.  248 F.3d at 143, 145; *see* p. 11, *supra*.

While the district court in *Weisfeld* did seek to extend the holding in *Eichorn* to naked no-hire agreements, its analysis was expressly criticized by the Third Circuit on appeal.  *See Weisfeld*, 84 Fed. App'x at 260 (explaining that, although

the court was affirming, "we disagree with certain statements made by the District Court as detailed below").

*Weisfeld* involved a series of no-poach agreements.  As part of a settlement agreement in prior litigation, Sun Chemical Corp. and Flint Ink "agreed that for a period of five years neither company would solicit the other's employees, and agreed to notify the other if they were planning to hire an unsolicited employee." 210 F.R.D. at 138.  Sun and Flint—and Sun and another ink manufacturer, INX— "later entered into more extensive agreements, in which Defendants promised not to hire each other's employees at all."  *Id.*  A class of printing ink employees alleged that the no-hire agreements violated Section 1.

In its decision denying class certification, the district court did not distinguish between the initial no-poach restrictions between Sun and Flint entered into as part of the settlement agreement and the subsequent more extensive naked no-poach agreements among Sun, Flint, and INX.  Rather, the court stated (incorrectly) that "*Eichorn* found that these types of [no-hire] agreements were unsuitable for *per se* analysis." *Id.* at 143.  The court deemed irrelevant plaintiffs' attempts to "factually distinguish *Eichorn*."  *Id.*  The court then held that there was no class-wide proof of antitrust injury from the no-hire agreement and thus class certification was inappropriate.  *Id.* at 145.

The Third Circuit affirmed the denial of class certification due to the lack of class-wide proof of antitrust injury, but it criticized the district court's analysis of the no-hire agreements.  84 Fed. App'x at 260 & n.2.  The court noted that "the facts in *Eichorn* are different than those here" and suggested that the factual differences (including the number of employers and broad duration of the no-hire agreements) could affect the appropriate legal analysis of the no-hire agreements. *Id.*  Yet the court ultimately declined to address whether the *per se* rule or rule of reason applied, finding the issue "irrelevant" given the lack of class-wide proof of antitrust injury.  *Id.* at 260.

While the Third Circuit's opinion in *Weisfeld* did not detail precisely when the *per se* rule applies to no-poach agreements, it refutes defendants' claim that no-poach agreements are *always* subject to the rule of reason.  Had the Third Circuit agreed with that broad proposition, it would have endorsed the district court's analysis of the no-hire agreements instead of criticizing it.

## II.    Plaintiffs Adequately Pleaded A *Per Se* Claim Here

The class complaint here alleges that the challenged no-poach agreements are *per se* unlawful naked restraints among competing employers.  *See* p. 3, *supra*. This parallels the United States' allegations in its *Knorr-Bremse* complaint that defendants were direct competitors in the labor market for skilled railway employees and entered into "a series of unlawful agreements" not "to solicit,

16

recruit, hire without prior approval, or otherwise compete for employees," which "were not reasonably necessary to any separate, legitimate business transaction or collaboration between the companies."  *Knorr-Bremse* Complaint, Doc. 1, at ¶¶ 1-4, 16-17, 30, 32; *see also Knorr-Bremse* Competitive Impact Statement, Doc. 3, at 12 ("As described in the Complaint, [the] No-Poach Agreements were naked restraints on competition for employees and were not reasonably necessary to any separate, legitimate business transaction or collaboration between the firms.").[6]

Plaintiffs' allegations of naked no-poach agreements are sufficient to state a *per se* claim under Section 1 of the Sherman Act because they allege a form of allocation agreement that—like other types of allocation agreements—have been recognized as *per se* unlawful.  Indeed, defendants' motion to dismiss never disputes the sufficiency of plaintiffs' allegations that the restraints were naked and not part of a broader collaboration among defendants.[7]  To the contrary, the motion rests on the erroneous premise that the court must apply the rule of reason even if

---

[6] Defendants argue that the plaintiffs' allegations differ from the United States' because the plaintiffs allege an overarching no-poach agreement among all the defendants, while the United States alleged several bilateral no-poach agreements among defendants.  *See* Joint Motion To Dismiss The Consolidated Class Action Complaint, Doc. 124-1, at 7-8.  The United States expresses no position on this issue.

[7] The allegations of naked no-poach agreements among defendants distinguishes this case from the no-poach restrictions that were ancillary to the sale of the company in *Eichorn* and from the no-poach restrictions adopted as part of the settlement agreement in *Weisfeld*.

the no-poach agreements are naked restraints of trade.  Because that is not the law, there is no basis to dismiss the claim.

## CONCLUSION

The Court should reject defendants' argument that no-poach agreements are always subject to the rule of reason under Section 1 of the Sherman Act and should hold that plaintiffs' allegations of naked no-poach agreements among defendants are sufficient to state a *per se* claim under Section 1 of the Sherman Act.

Dated:  February 8, 2019

Respectfully submitted,

/s/ Nickolai G. Levin
Nickolai G. Levin (DC Bar 490881)

SCOTT BRADY
 *United States Attorney*

JENNIFER R. ANDRADE
 *Assistant U.S. Attorney*
 *Chief, Civil Division*
 U.S. Courthouse and Post Office
 700 Grant St., Suite 4000
 Pittsburgh, PA  15219
 Tel: (412) 894-7354

MAKAN DELRAHIM
 *Assistant Attorney General*

ANDREW C. FINCH
 *Principal Deputy Assistant Attorney*
 *General*

MICHAEL F. MURRAY
 *Deputy Assistant Attorney General*

WILLIAM J. RINNER
 *Chief of Staff and Senior Counsel*

KRISTEN C. LIMARZI
NICKOLAI G. LEVIN
DOHA G. MEKKI
 *Attorneys*
 U.S. Department of Justice
 Antitrust Division
 950 Pennsylvania Ave. NW #3224
 Washington, DC  20530
 Tel: (202) 514-2886

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: RAILWAY INDUSTRY EMPLOYEE NO-POACH ANTITRUST LITIGATION, | ) ) ) ) | Civil No. 2:18-MC-00798-JFC |
| | ) | MDL No. 2850 |
| This Document Relates to: ALL ACTIONS | ) ) ) | Judge Joy Flowers Conti |

CERTIFICATE OF SERVICE

I hereby certify that on February 8, 2019, I caused to be electronically filed the foregoing Statement of Interest with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all parties by operation of the Court's electronic filing systems.

Dated:  February 8, 2019                          /s/ Nickolai G. Levin
                                                            *Attorney*

19