# EXHIBIT A

<u>SETTLEMENT AGREEMENT</u>

This Settlement Agreement ("Agreement") is made and entered into as of this 16th day of October 2019 (the "Execution Date") by and between Defendants Knorr-Bremse AG, New York Air Brake LLC, Knorr Brake Company LLC, and Bendix Commercial Vehicle Systems LLC ("Knorr" or "Settling Defendants") and Plaintiffs (as defined herein at Paragraph 11), both individually and on behalf of a Settlement Class (as defined herein at Paragraph 19).

**WHEREAS**, Plaintiffs are the proposed Class Representatives in the action captioned *In re Railway Industry Employee No-Poach Antitrust Litigation*, MDL No. 2850, in the United States District Court for the Western District of Pennsylvania;

**WHEREAS**, on July 31, 2019, Plaintiffs filed a Consolidated Amended Complaint that alleges that Knorr and the Wabtec Defendants (defined to include Westinghouse Air Brake Technologies Corporation, Wabtec Railway Electronics, Inc., Railroad Controls, L.P., Xorail Inc., Faiveley Transport, S.A., and Faiveley Transport North America Inc.) agreed that they would not compete for each other's employees in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1;

**WHEREAS**, the Consolidated Amended Complaint further alleges, among other things, that, as a result of the agreement, Plaintiffs and the proposed Class suffered monetary damages;

**WHEREAS**, Plaintiffs and Knorr (collectively the "Settling Parties") have engaged in substantial arm's-length negotiations in an effort to resolve all claims that have been, or could have been, asserted in the Action, which negotiations resulted in this Settlement Agreement;

**WHEREAS**, the Settling Defendants have denied and continue to deny that they engaged in any wrongdoing of any kind, or that they violated or breached any law, regulation, or duty owed to the proposed Class, have denied that they have any liability as a result of the allegations

1

made in the Consolidated Amended Complaint, and have asserted a number of defenses to Plaintiffs' claims;

WHEREAS, Settling Defendants have agreed to enter into this Agreement solely to avoid the further expense, inconvenience, and distraction of burdensome and protracted litigation, and to thereby put to rest with finality this controversy with Plaintiffs and the Settlement Class;

WHEREAS, Plaintiffs and Class Counsel have concluded that it is in the interest of all members of the proposed Class to resolve finally and have concluded completely their claims against the Settling Defendants and that the terms of the Settlement Agreement are in the best interests of the proposed Class and are fair, reasonable, and adequate; and

NOW, THEREFORE, in consideration of the promises, agreements, covenants, representations, and warranties set forth herein, and other good and valuable consideration provided for herein, the Settling Parties agree to a full, final, and complete settlement of the Action on the following terms and conditions:

A.    **Definitions**

The following terms, as used in this Agreement, have the following meanings:

1.    "Action" or "Litigation" means the lawsuit captioned *In re: Railway Industry Employee No-Poach Antitrust Litigation*, MDL No. 2850, in the United States District Court for the Western District of Pennsylvania.

2.    "Attorneys' Fees and Expenses" means the amounts approved by the Court for payment to Class Counsel, including attorneys' fees, costs, and litigation expenses, as described in Paragraph 48 herein, which amounts are to be paid solely from the Settlement Fund.

3.      "Consolidated Amended Complaint" means the Consolidated Amended

Complaint filed in the Action on July 31, 2019 (Dkt. 199).

4.      "Court" means the United States District Court for the Western District of

Pennsylvania.

5.      "Effective Date" means the date by which all of the following events and

conditions have occurred:

      a.      All parties have executed this Settlement Agreement;

      b.      The Court has preliminarily approved this Settlement Agreement;

      c.      Notice has been provided to the Settlement Class in a manner provided by
the Court;

      d.      The Court has entered a Final Judgment; and

      e.      The Final Judgment has become final, with the occurrence of the
following: (i) entry by the Court of a final order approving this Settlement
Agreement under Rule 23 of the Federal Rules of Civil Procedure together
with entry of a final judgment dismissing the Action as to Knorr and all
claims against the Knorr Releasees with prejudice as to all Settlement
Class Members, and (ii) expiration of the time to appeal from the Court's
approval of this Settlement Agreement and entry of the Final Judgment or,
if an appeal from an approval and Final Judgment is taken, the affirmance
of such Final Judgment in its entirety, without modification, by the court
of last resort to which an appeal of such Final Judgment may be taken,
provided, however, a modification or reversal on appeal of any amount of
Attorneys' Fees and Expenses awarded by the Court from the Settlement
Fund or any plan of allocation or distribution of the Settlement Fund shall
not be deemed to be a modification of all or part of the terms of this
Settlement Agreement or the Final Judgment.  Neither the provisions of
Rule 60 of the Federal Rules of Civil Procedure nor the All Writs Act, 28
U.S.C. Section 1651, shall be taken into account in determining the above-
stated times.

6.      "Escrow Agent" means Citibank, N.A., which, assuming it agrees to do so, shall

enter into an Escrow Agreement to carry out the tasks more fully detailed in that agreement,

including to receive, hold, invest, and disburse the Settlement Fund, subject to the direction of

the Notice Administrator.  The Settling Parties may replace Citibank, N.A. with another mutually

agreeable financial institution.

7.      "Final Approval" means the Order of the Court granting final approval of the

Settlement Agreement pursuant to Federal Rule of Civil Procedure 23(e).

8.      "Final Approval Hearing" or "Fairness Hearing" means the hearing at which the

Court will consider Named Plaintiffs' motion for judgment and final approval of the Settlement.

9.      "Knorr Defendants" or "Knorr" shall refer to:

      a.      "Knorr-Bremse" means Knorr-Bremse AG, a German company with its
          headquarters in Munich, Germany.

      b.      "Knorr Brake Company" means Knorr Brake Company LLC, a Delaware
          corporation with its headquarters in Westminster, Maryland, ultimately
          owned by Knorr-Bremse.

      c.      "NY Air Brake" means New York Air Brake LLC, a Delaware
          corporation with its headquarters in Watertown, New York, ultimately
          owned by Knorr-Bremse.

      d.      "Bendix" means Bendix Commercial Vehicle Systems LLC, a Delaware
          corporation with its headquarters in Elyria, Ohio, ultimately-owned
          subsidiary of Knorr-Bremse.

10.      "Parties" means Knorr and Plaintiffs.

11.      "Plaintiffs" and "Class Representatives" mean Stephen Baldassano, John Brand,

David Escalera, Brian Lara, and Patricia Lonergan.

12.      "Plaintiffs' Counsel" or "Class Counsel" means the law firms of Lieff Cabraser

Heimann & Bernstein, LLP and Fine, Kaplan and Black, R.P.C., which have been appointed as

Interim Co-Lead Counsel by the Court (Dkt. 106).

13.      "Preliminary Approval" means the Court's Order preliminarily approving the

Settlement, the Plan of Notice, the form of Notice, and the Plan of Allocation.

14.     "Protective Order" means the Stipulated Protective Order entered in the Action (Dkt. 123).

15.     "Released Claims" has the meaning specified in Paragraph 37.

16.     "Released Parties" or "Knorr Releasees" shall mean Knorr-Bremse AG, Knorr Brake Company LLC, New York Air Brake LLC, Bendix Commercial Vehicle Systems LLC, and each of their respective current and former parents, affiliates, subsidiaries, divisions, stockholders, insurers, predecessors, successors, and assigns of each of the above; and each and all of the current and former executive officers, directors, representatives, agents and attorneys of each of the foregoing.

17.     "Releasor" shall mean the Class Representatives and each Class Member, each of their respective current and former heirs, executors, administrators, and assigns; and anyone claiming by or through any of the foregoing.

18.     "Settlement," "Agreement," and "Settlement Agreement" each mean the instant settlement terms agreed to by the Settling Parties as reflected in this Settlement Agreement.

19.     "Settlement Class" means:  "All natural persons who worked in job families in which railway industry experience or skills were valuable and were employed in the United States by one or more of the following: (a) from January 1, 2009 through April 3, 2018, Westinghouse Air Brake Technologies Corporation or its subsidiaries, including Wabtec Railway Electronics, Inc., Railroad Controls, L.P., and Xorail Inc.; (b) from January 1, 2009 through April 3, 2018, Knorr Brake Company LLC or New York Air Brake LLC; or (c) from June 1, 2010 through April 3, 2018, Faiveley Transport, S.A. or Faiveley Transport North America Inc.  Excluded from the Settlement Class are senior executives and personnel in the human resources, recruiting, and legal departments of the Defendants."

5

20. "Settlement Class Member" means any person who meets the "Settlement Class" definition above and who has not timely and properly opted out of the Settlement.

21. "Settlement Payment" means the sum of twelve million dollars ($12,000,000) that the Settling Defendants shall pay or cause to be paid as described in Paragraph 41 and subject to the limitations herein to be held, invested, administered, and disbursed pursuant to this Settlement Agreement.

22. "Settlement Fund" is the account set up by the Escrow Agent into which the Settlement Payment is paid.

23. "Settling Defendants" means Knorr-Bremse AG, New York Air Brake LLC, Knorr Brake Company LLC, and Bendix Commercial Vehicle Systems LLC.

24. "Settling Defendants' Counsel" means the law firm of Baker McKenzie LLP.

25. "Wabtec Defendants" shall be defined to include Westinghouse Air Brake Technologies Corporation, Wabtec Railway Electronics, Inc., Railroad Controls, L.P., Xorail Inc., Faiveley Transport, S.A., and Faiveley Transport North America Inc.

**B.** **Settlement Class Certification**

26. The Parties to this Agreement hereby stipulate for purposes of settlement only that the requirements of Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure are satisfied, and, subject to Court approval, the Settlement Class set forth in Paragraph 19 shall be certified for settlement purposes as to Knorr only (with the understanding that, by stipulating to the proposed Settlement Class, Knorr does not agree that Rule 23 requirements are met for purposes of a litigation class and reserves all rights to oppose class certification in the event the Settlement is not approved).

6

C. **Approval of this Agreement, Preliminary Approval, Notice, and Final Approval**

27.     Knorr shall cooperate to the extent reasonably necessary in connection with Plaintiffs' Counsel's motions for preliminary and final approval of the Settlement and related documents necessary to effectuate and implement the terms and conditions of this Agreement.

28.     Knorr shall have the right to review and comment on the motions for preliminary and final approval, and Class Counsel shall provide Knorr with reasonable time to conduct such review.  Class Counsel shall consider any such comments in good faith, and shall not unreasonably reject such comments.

29.     Plaintiffs shall, following entry by the Court of an Order granting preliminary approval ("Preliminary Approval") of this Settlement and dissemination as notice to the Settlement Class, seek entry of an order granting final approval and entering final judgment in a form to be agreed upon by the Parties which shall:

    a.    approve finally this Agreement and its terms as being a fair, reasonable, and adequate settlement as to the Settlement Class Members within the meaning of Rule 23 of the Federal Rules of Civil Procedure and directing its consummation according to its terms and conditions;

    b.    determine that the Class Notice constituted, under the circumstances, the most effective and best practicable notice of this Agreement and of the Fairness Hearing, and constituted due and sufficient notice for all other purposes to all persons entitled to receive notice;

    c.    confirm the appointment of Plaintiffs as class representatives and Plaintiffs' Counsel as Settlement Class Counsel;

    d.    direct that, as to Knorr, the Action be dismissed with prejudice and, except as explicitly provided for in this Agreement, without costs;

    e.    reserve to the United States District Court for the Western District of Pennsylvania exclusive jurisdiction over the Settlement and this Agreement, including the administration and consummation of this Settlement;

7

1845906.4

f.    determine under Federal Rule of Civil Procedure 54(b) that there is no just reason for delay, and direct that the final judgment of dismissal as to Knorr shall be entered; and

g.    require Plaintiffs' Counsel to file with the Clerk of the Court a record with the names and addresses of Class Members who timely exclude themselves from the Settlement Class, and provide a copy of the record to Knorr's Counsel.

30.    If the Court denies the motion for Preliminary Approval without leave to file a revised motion for Preliminary Approval, and appellate review is not sought or is denied, the case will proceed as if no settlement had been attempted, and the Settling Parties shall be returned to their respective procedural postures, i.e., status quo as of August 13, 2019, so that the Settling Parties may take such litigation steps that Plaintiffs or the Settling Defendants otherwise would have been able to take absent the pendency of this Settlement Agreement.  In the event the Settlement does not receive Preliminary Approval and appellate review is not sought or is denied, the Settling Parties will negotiate and submit for Court approval a modified case schedule.

31.    This Agreement shall become final only upon the Effective Date defined above. The Agreement shall not be rescinded except in accordance with Paragraphs 57 to 63 of this Agreement.

D.    **Appointment of Notice Administrator and Notice of Settlement to Class Members**

32.    Class Counsel shall retain a reputable and experienced Notice Administrator, which shall be responsible for the notice administration process, calculation of payments to Class Members based on the Plan of Allocation approved by the Court, distributions to Class Members, withholding and paying applicable taxes, and other duties as provided herein and in any agreement entered into between Class Counsel and the Notice Administrator.  Class Counsel shall obtain approval by the Court of the choice of Notice Administrator.  The Notice

8

Administrator shall sign and be bound by the Protective Order entered in the Action.  The fees and expenses of the Notice Administrator shall be paid exclusively out of the Settlement Fund (and/or any other settlement funds that may be created through other settlements).  Prior to the Effective Date, expenses incurred by the Notice Administrator relating to this Settlement and approved by the Court shall be paid solely from the Settlement Fund (or any other settlement fund that may be created through other settlements), upon invoice to Class Counsel.  In no event shall Knorr be separately responsible for fees or expenses of the Notice Administrator.

33.     Plaintiffs' Counsel shall take all necessary and appropriate steps to ensure that notice of this Settlement Agreement and the date of the hearing scheduled by the Court to consider the fairness, adequacy, and reasonableness of this Agreement are provided in accordance with the Federal Rules of Civil Procedure and any Court orders.  Notice will be issued after preliminary approval by the Court and subject to any Court orders regarding the content and means of dissemination of notice.

34.     For purposes of effectuating notice, Knorr will provide the Notice Administrator an updated list of current or most-recently known names, addresses, and e-mail address information for all Class Members at least three weeks before the notice date ordered by the Court, to the extent such information is available and reasonably accessible.  Class Counsel will ask the Court to require the Wabtec Defendants to do the same.  Class Counsel shall, in accordance with Rule 23(c)(2) of the Federal Rules of Civil Procedure, direct the Notice Administrator approved by the Court to provide the Class with Notice as ordered by the Court.

35.     Class Counsel shall propose, and Knorr shall not oppose, that the Notice be disseminated by publication (through print, email, and/or online notices) or such other method using a methodology developed by the Notice Administrator.

9

36.     Subject to Court approval, disbursements for any payments and expenses incurred in connection with the costs of notice and administration of the Settlement Fund by the Notice Administrator shall be made from the Escrow Account upon written notice to the Escrow Agent by Plaintiffs' Counsel of such payments and expenses.

### E.     Release and Discharge

37.     Upon the Effective Date, each Releasor shall release, acquit, forever discharge and covenant not to sue the Knorr Releasees, their past or present parents, subsidiaries, divisions, affiliates, stockholders, officers, directors, insurers, employees, agents, attorneys, and any of their legal representatives (and the predecessors, heirs, executors, administrators, successors, purchasers, and assigns of each of the foregoing) from all claims, demands, judgment, actions, suits and/or causes of action, whether federal or state, known or unknown, asserted or unasserted, regardless of legal theory, arising in any way from or in any way related to the facts, activities, or circumstances alleged in one or more of the complaints in the Litigation, up to the Effective Date of the Settlement Agreement (the "Release" or "Released Claims").  Each Releasor hereby covenants and agrees that he, she, or it shall not, hereafter, assert a claim or otherwise seek to establish liability against any Released Party based in whole or in part on any Released Claims. In addition, each Releasor hereby expressly waives and releases, upon this Settlement Agreement becoming final, any and all provisions, rights, or benefits conferred by section 1542 of the California Civil Code, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

Each Releasor shall further be deemed to have, and shall have, waived any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or

principle of common law, which is similar, comparable or equivalent to section 1542 of the

California Civil Code.  Each member of the Settlement Class may hereafter discover facts other

than or different from those which he, she or it knows or believes to be true with respect to the

Released Claims.  Nevertheless, each member of the Settlement Class hereby expressly waives

and fully, finally, and forever settles and releases, upon this Settlement becoming final, the

Released Claims, whether any Released Claim is known or unknown, suspected or unsuspected,

contingent or non-contingent, concealed or hidden, and also forever waives and relinquishes any

and all rights and benefits existing under any law or principle of law in any jurisdiction that

would limit or restrict the effect or scope of the provisions of the Release set forth above without

regard to the subsequent discovery or existence of other different facts.

38.     The Release set forth herein shall not release any claims, whether pending or not,

whether known or unknown, for product liability, personal injury, breach of warranty, breach of

contract, or violation of the Uniform Commercial Code or any other claims that were not or

could not have been alleged in the Litigation whatsoever that are not related to the subject matter

of the Litigation.

39.     Each Plaintiff and each Settlement Class Member who submits a claim to

participate in the distribution of the Settlement Fund shall represent and warrant that his, her, or

its portion of the Released Claims is his, her, or its property and he, she, or it has not assigned or

transferred to any person or entity any right to recovery for any claim or potential claim that

would otherwise be released under this Agreement.  Each Plaintiff and each Settlement Class

Member who submits a claim to participate in the distribution of the Settlement Fund shall

further represent and warrant that each of them has a valid and existing right to release such

claims and is releasing such claims pursuant to his, her, or its membership in the Settlement Class.

40.     Upon the Effective Date, Knorr shall release Plaintiffs, Settlement Class members, and their counsel from any claims relating to the institution, prosecution, or settlement of the pending Action except for claims arising out of breach or enforcement of this Agreement.

### F.     **Payment**

41.     Knorr shall pay or cause to be paid the Settlement Payment as consideration for the Settlement.  The Settlement Payment reflects Knorr's total obligation to the Settlement Class in connection with the Action and under this Settlement Agreement, including without limitation all obligations for (i) all claims by Settlement Class Members, (ii) all fees and costs of Class Counsel as ordered by the Court, (iii) any service payment, and (iv) all costs of Class Notice, Claims Administration, and taxes.  Under no circumstances shall Knorr be required to pay more than the Settlement Payment with respect to any liability arising out of the Action and/or the Settlement.  The Settlement Payment shall be wire transferred by Knorr or its designee to the Bank designated as Escrow Agent by Plaintiffs' Counsel within ten (10) business days of entry of an order by the Court granting preliminary approval of the Settlement.

42.     The Parties expressly agree that under no circumstances shall Knorr be responsible for paying any monies, benefits, costs, administrative costs, expenses, or attorneys' fees in settlement of this Action other than as expressly provided for by this Agreement, nor will Knorr be required to take any action or incur any liability except as expressly provided by this Agreement.

43.     Each Settlement Class Member shall look solely to the Settlement Fund for settlement and satisfaction, as provided herein, of all claims released by the Releasors pursuant to this Agreement.

1845906.4

44. The Escrow Agent shall place the Settlement Fund in an escrow account (the "Account") created by order of the Court intended to constitute a "qualified settlement fund" ("QSF") within the meaning of Section 1.468B-1 of the Treasury Regulations ("Treasury Regulations") promulgated under the U.S. Internal Revenue Code of 1986, as amended (the "Code"). The Settlement Fund will be invested in instruments secured by the full faith and credit of the United States or an interest bearing or non-interest bearing deposit obligation of Citibank, N.A. insured by the Federal Deposit Insurance Corporation ("FDIC") to the applicable limits and any interest earned (or negative interest) thereon shall become part of (or paid from) the Settlement Fund. Knorr shall be the "transferor" to the QSF within the meaning of Section 1.468B-1(d)(1) of the Treasury Regulations with respect to the Settlement Fund or any other amount transferred to the QSF pursuant to this Settlement Agreement. The Notice Administrator shall be the "administrator" of the QSF within the meaning of Section 1.468B-2(k)(3) of the Treasury Regulations, responsible for causing the filing of all tax returns required to be filed by or with respect to the QSF, paying from the QSF any taxes owed by or with respect to the QSF, and complying with any applicable information reporting or tax withholding requirements imposed by Section 1.468B-2(*l*)(2) of the Treasury Regulations or any other applicable law on or with respect to the QSF. Knorr and the Notice Administrator shall reasonably cooperate in providing any statements or making any elections or filings necessary or required by applicable law for satisfying the requirements for qualification as a QSF, including any relation-back election within the meaning of Section 1.468B-1(j) of the Treasury Regulations.

45. Knorr and Knorr's Counsel shall have no liability, obligation, or responsibility with respect to the investment, disbursement, or other administration or oversight of the Settlement Fund or QSF and shall have no liability, obligation, or responsibility with respect to

13

any liability, obligation, or responsibility of the Escrow Agent or Notice Administrator, including but not limited to, liabilities, obligations, or responsibilities arising in connection with the investment, disbursement or other administration of the Settlement Fund and QSF.

**G.     Allocation of Settlement Fund**

46.     The allocation of the Settlement Fund among the Settlement Class shall be subject to a plan of allocation to be proposed by Plaintiffs' Counsel and approved by the Court.  Knorr will take no position with respect to such proposed plan of allocation or such plan as may be approved by the Court.  Knorr also will have no involvement in the claims process.

47.     Knorr shall not have any responsibility, financial obligation, or liability whatsoever with respect to the investment, distribution, use or administration of the Escrow Account, including, but not limited to, the costs and expenses of such investment, distribution, use, or administration.

**H.     Plaintiffs' Counsel's Fees and Expenses and Class Representative Service Awards**

48.     Plaintiffs' Counsel's attorneys' fees and expenses, as awarded by the Court, shall be paid from the Escrow Account, immediately upon the entry of the order by the Court awarding such amounts ("Fee and Expense Award"), notwithstanding the existence of any timely filed objections thereto, or potential for appeal therefrom, or collateral attack on the Settlement or any part thereof, subject to Plaintiffs' Counsel's joint and several obligation to repay those amounts to the Escrow Account, plus accrued interest at the same net rate as is earned by the Escrow Account, and subject to an appropriate undertaking, if and when, as a result of any appeal and further proceedings on remand, or successful collateral attack, the Fee and Expense Award is reduced or reversed, or return of the Escrow Account is required.  For the avoidance of

14

doubt, this Fee and Expense Award shall come from the Settlement Fund, and shall not be an additional amount.

49.     If there is any payment of attorneys' fees or reimbursement of expenses advanced by Plaintiffs' Counsel prior to the Effective Date, any attorneys, individuals, or firms receiving payment shall provide letters of credit from nationally chartered banks payable to Knorr sufficient to secure any repayment obligations of those attorneys, individuals, or firms.  In the event the Fee and Expense Award is reduced or reversed or return of the Escrow Account is otherwise required, Plaintiffs' Counsel shall, within ten (10) business days from the event which requires repayment of the Fee and Expense Award, refund to the Escrow Account the Fee and Expense Award paid to them, plus accrued interest at the same net rate as is earned by the Escrow Account.

50.     Knorr will take no position on Plaintiffs' Counsel's request for attorneys' fees and expenses, the appropriateness of any such award by the Court, or the timing of payment to Plaintiffs' Counsel.  Plaintiffs' Counsel may, at a time approved by the Court, seek an award of attorneys' fees and reasonable litigation expenses to be paid out of the Escrow Account after the final approval of the Agreement.

51.     At the Fairness Hearing, Class Counsel shall seek Court approval for service awards to Named Plaintiffs to compensate them for their contributions to this Action.  The proposed service awards shall be in addition to any monetary award to Named Plaintiffs under the Plan of Allocation, and is subject to Court approval.  Such service awards shall be paid by the Notice Administrator solely out of the Settlement Fund upon Court approval.  For the avoidance of doubt, this payment shall come from the Settlement Fund, and shall not be an additional amount.

52.     Knorr agrees to take no position on such service awards to Named Plaintiffs.

53.     Any service payment to Named Plaintiffs shall not be considered compensation under the terms of any benefits plan or for any purpose except to the extent required for tax purposes.  The receipt of a service payment shall not affect the amount of any contribution to or level of benefits under any benefit plan.

**I.      <u>Cooperation</u>**

54.     Knorr shall provide the following cooperation:

     a.      Knorr agrees to provide a list of job titles of United States employees of New York Air Brake and Knorr Brake Company, to the extent it is reasonably available.

     b.      No later than 60 business days following Plaintiffs' motion for preliminary approval of this settlement, or on another mutually agreeable time, Knorr shall provide a summary of the facts known to Knorr that are relevant to the claims asserted in the Litigation.  Under no circumstances should this requirement obligate Knorr to (i) waive any privilege, including without limitation any attorney-client, work product, or joint-defense privilege; (ii) violate any privacy or labor laws of any relevant jurisdiction; or (iii) require any investigation or collection of documents or data by Knorr. Plaintiffs reserve the right to ask reasonable follow-up questions regarding the summary, and the Knorr Defendants reserve all rights with respect to any such questions, including the right to object based on burden.

     c.      Knorr shall respond to currently-pending discovery requested by Class Counsel as limited by prior agreements in scope.  This discovery will include responsive documents found pursuant to the previously agreed-upon search terms and custodians, and employee data as requested in Class Counsel's June 27, 2019 letter.  Knorr shall also respond to additional discovery, as reasonably requested by Class Counsel, consistent with the obligations of a non-party under Federal Rule of Civil Procedure 45.

     d.      Knorr shall make available for interviews with Class Counsel and/or their experts up to eight (8) current employees, as designated by Class Counsel. Any interviews conducted pursuant to this subsection shall be limited to five (5) hours of interview time (excluding breaks).  Three (3) of these interviews shall take place within 30 business days following Plaintiffs' motion for preliminary approval of this Settlement or on another mutually agreeable time, and shall be with current Knorr employees with personal knowledge regarding market conditions, competition, and pay practices in

16

the U.S. railway industry.  For the avoidance of doubt, this provision does not require any investigation or collection of documents or data by Knorr, and merely requires Knorr witnesses to provide non-privileged information within their personal knowledge.

e.  Knorr shall make available up to five (5) current employees to provide deposition testimony in the Litigation pursuant to and compliant with Rule 45 of the Federal Rules of Civil Procedure.  Any depositions conducted pursuant to this subsection shall be limited to a single day of seven (7) hours of testimony.  This agreement does not imply that Named Plaintiffs have waived the right to seek additional depositions from Knorr consistent with Rule 45, and Knorr reserves the right to object to such additional depositions.

f.  Upon request with reasonable advance notice, Knorr shall provide up to five (5) declarations from current employees designated by Plaintiffs on non-privileged topics relevant to the Litigation within the declarant's personal knowledge.

g.  Upon request with reasonable advance notice, Knorr shall provide a declaration or declarations authenticating any Knorr-produced document designated by Named Plaintiffs as a trial exhibit or an attachment to a court filing in the Litigation, including certifying that documents are records of regularly conducted business activities under Federal Rule of Evidence 803(6) if applicable.

h.  Knorr will produce at least three (3) current relevant Knorr employee witnesses in the event of trial, as selected by Class Counsel.  Knorr will also make good faith efforts to assist Plaintiffs in securing the trial testimony of former relevant Knorr employee witnesses.

i.  Knorr will provide the last known address and contact information for any former employees requested by Named Plaintiffs, subject to compliance with any privacy or labor laws.  Knorr will also make good faith efforts to secure the cooperation of relevant former employees in meeting Knorr's cooperation obligations herein.

55.  Any cooperation request by Class Counsel is subject to the discovery scope and limits of Federal Rule of Civil Procedure 26(c), the ESI order(s) in the Litigation, and the Protective Order in the Litigation.

56.  Any cooperation or disclosures shall be subject to compliance with applicable foreign laws, including any privacy or labor laws.  Nothing in this Settlement Agreement shall be

interpreted to require Knorr to violate any such privacy or labor laws of any relevant jurisdiction. The Settling Parties expect that the majority of witnesses, deponents, declarants, document custodians, and interviewees in Paragraph 54 shall be United States employees of New York Air Brake or Knorr Brake Company. To the extent Class Counsel designates, under Paragraph 54, a witness, deponent, declarant, document custodian, or interviewee employed by Knorr-Bremse AG in Germany, any such cooperation obligation shall be subject to compliance with foreign laws, including privacy and labor laws, including any necessary employee consent. Further, for such German employees, Knorr reserves the right to object, on the basis that United States employees of New York Air Brake or Knorr Brake Company possess the same information and would be a less burdensome source of that information.

### J.       Rescission

57.       If the Court does not grant final approval to this Agreement or certify the Settlement Class or if such approval or certification is modified or set aside on appeal, or if the Court does not enter the final judgment provided for in Paragraph 29 of this Agreement, or if the Court enters the final judgment and appellate review is sought, and on such review, such final judgment is not affirmed, then Knorr and Plaintiffs shall each, in their sole discretion, have the option to rescind this Agreement in its entirety within ten (10) business days of the action giving rise to such option. If this Agreement is rescinded, within ten (10) business days of the later of the written notice of rescission to Plaintiffs' Counsel and the Escrow Agent and Knorr's written instructions to the Escrow Agent, the $12 million Settlement Fund and any accrued interest, less only the cost of notice and settlement administration authorized by and actually and reasonably incurred pursuant to this Agreement and Court Order, shall be wire transferred to Knorr, pursuant to its instructions.

18

58.     In the event that the Total Compensation of Settlement Class Members that timely and validly exclude themselves from the Settlement exceeds ████████ of the Total Compensation of all of the Settlement Class Members, or exceeds ████████ of the headcount of the Settlement Class Members (the "Threshold"), then Knorr, in its sole discretion, shall have the unilateral, unconditional option to withdraw from the Settlement Agreement and render the Settlement Agreement null and void as between Knorr and Named Plaintiffs, and paragraph 57 of the Settlement Agreement shall apply as to Knorr.

59.     For purposes of assessing and estimating the Threshold, the Notice Administrator shall, at least twenty-eight (28) days before the Fairness Hearing, provide the Settling Parties (a) with a calculation of (i) Total Compensation of all Class Members, and (ii) Total Compensation of the Class Members that timely and validly opted out of the Settlement; and (b) back-up data sufficient for a Settling Party to independently verify the accuracy of the foregoing calculations. It is the Settling Parties' intention to use the best reasonably available information in making these calculations, but not to let the imprecision or incompleteness of such data stand in the way of making such calculations.  The burden of proof, or disproof, is shared equally between the Settling Parties such that the Settling Parties equally bear the consequences of any imperfections or incompleteness of the available data.

60.     If Knorr seeks to terminate the Settlement Agreement on the basis that the Threshold has been met, the Settling Parties agree that any dispute as to whether the Threshold has been met will be resolved by the Special Master appointed by the Court.  Any decision of the Special Master may be appealed to the Court for review in accordance with the terms of the Special Master appointment in the Action.

61.     To exercise its option to terminate the Settlement Agreement, Knorr's counsel must provide Class Counsel with written notice no later than twenty one (21) days prior to the Fairness Hearing.  The Parties will use their best efforts to complete the dispute resolution process pursuant to Paragraph 60 above at least seven (7) days before the Fairness Hearing.

62.     If this Agreement does not become final as provided for in paragraph 29, Plaintiffs' Counsel and Knorr agree that this Agreement, including its exhibits, and any and all negotiations, documents, information, and discussions associated with it shall be without prejudice to the rights of Knorr or Plaintiffs, shall not be deemed or construed to be an admission or denial, or evidence or lack of evidence of any violation of any statute or law or of any liability or wrongdoing, or of the truth or falsity of any of the claims or allegations made in this Action in any pleading, and shall not be used directly or indirectly, in any way, whether in this Action or in any other proceeding.  If the Agreement does not become final, the Parties specifically agree that Knorr's stipulation to a Settlement Class shall not be used or relied upon by Plaintiffs in support of certification of a litigation class.  Plaintiffs reserve their rights to use any documents or depositions that Knorr provided pursuant to its cooperation obligations under this Agreement, but only if both parties agree that such documents or depositions would have been obtainable by separate and independent discovery served on Knorr under the Federal Rules of Civil Procedure.

63.     Plaintiffs' Counsel further agree that, in the event of rescission, the originals and all copies of any notes, memos or records related to the cooperation obligations pursuant to paragraph 54 shall be returned to Knorr at Knorr's expense or destroyed by Plaintiffs' Counsel at their own expense, provided, however, that such attorney notes, memoranda, or records may be destroyed rather than returned if an affidavit of such destruction is promptly provided by Plaintiffs' Counsel to Knorr's Counsel.

K.     **Dispute Resolution**

64.     Any dispute arising out of the finalization of the settlement documentation or cooperation on this Settlement Agreement will be resolved by the Special Master appointed by the Court.  Any decision of the Special Master may be appealed to the Court for review in accordance with the terms of the Special Master appointment in the Action.

L.     **Taxes**

65.     Plaintiffs' Counsel shall be solely responsible for directing the Notice Administrator to file all informational and other tax returns necessary to report any taxable and/or net taxable income earned by the Settlement Fund.  Further, Plaintiffs' Counsel shall be solely responsible for directing the Escrow Agent to make any tax payments, including interest and penalties due, on income earned by the Settlement Fund ("Tax Expenses").  Plaintiffs' Counsel shall be entitled to direct the Escrow Agent in writing to pay customary and reasonable Tax Expenses, including reasonable professional fees and expenses incurred in connection with carrying out their responsibilities as set forth in this Paragraph, from the applicable Settlement Fund by notifying the Escrow Agent in writing.  Knorr shall have no responsibility to make any tax filings or tax payments relating to this Agreement or the Settlement Fund.

66.     For the purpose of § 468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "Administrator" of the Settlement Amount shall be the Notice Administrator, who shall timely and properly file or cause to be filed on a timely basis, all tax returns necessary or advisable with respect to the Settlement Fund (including, without limitation, all income tax returns, all informational returns, and all returns described in Treasury Regulation § 1.468B 2(1)).

67.     The Parties to this Agreement and their Counsel shall treat, and shall cause the Notice Administrator to treat, the Settlement Fund as being at all times a "qualified settlement

21

fund" within the meaning of Treasury Regulation § 1.468B 1.  In addition, the Notice

Administrator and, as required, the parties, shall timely make such elections as necessary or

advisable to carry out the provisions of this Paragraph, including the "relation-back election" (as

defined in Treasury Regulation § 1.468B 1(j)) back to the earliest permitted date.  Such elections

shall be made in compliance with the procedures and requirements contained in such regulations.

It shall be the responsibility of the Notice Administrator to timely and properly prepare and

deliver the necessary documentation for signature by all necessary parties and thereafter to cause

the appropriate filing to occur.  All provisions of this Agreement shall be interpreted in a manner

that is consistent with the Settlement Fund being a "qualified settlement fund" within the

meaning of Treasury Regulation § 1.468B 1.

      68.     Payments to Named Plaintiffs and other Class Members from the Account will be

subject to applicable tax withholding and reporting requirements and shall be made net of all

applicable employment taxes, including, without limitation, federal, state, and local income tax

withholding and applicable FICA and Medicare taxes.

      69.     The Notice Administrator, as administrator of the QSF, shall report that portion of

the Settlement Fund payable as wages by the QSF to each eligible Class Member and to the

United States Internal Revenue Service ("IRS") and to other appropriate taxing authorities (each

of the IRS and any such other taxing authority, a "Taxing Authority," and collectively, "Taxing

Authorities") on an IRS Form W-2, or any other applicable form.  Such amounts shall be subject

to applicable employment taxes and withholding taxes, including, without limitation, FICA,

FUTA, Medicare, and any state and local taxes, including, without limitation, SUTA, as

determined by the Notice Administrator as administrator of the QSF making such payments.

70.     The Notice Administrator shall pay from the QSF the employee's and employer's shares of all applicable U.S. federal, state, and local taxes, including, without limitation, the employer's share of FICA, FUTA, Medicare, and any state and local taxes, including without, limitation, SUTA, required to be paid by an employee or employer on amounts treated as wages (all such U.S. federal, state, and local taxes, collectively the "Payroll Taxes").  Named Plaintiffs, Class Counsel, Class Members, and the Notice Administrator shall not seek payment for Payroll Taxes from Knorr.

71.     If any portion of the Settlement Fund payable by the QSF to each eligible Class Member is determined to be treated as other than wages, the Notice Administrator, as administrator of the QSF, shall report that portion to the Class Member, and all applicable Taxing Authorities, to the extent required by law, under the Class Member's name and U.S. federal taxpayer identification number on IRS Forms 1099, 1042-S, or other applicable forms, and such payments shall be made without deduction for taxes and withholdings, except as required by law, as determined by the Notice Administrator, as administrator of the QSF making such payments.

72.     The Notice Administrator shall be responsible to satisfy from the Settlement Fund any and all federal, state, and local employment and withholding taxes, including, without limitation, federal, state and local income tax withholding, and any U.S. federal taxes including, without limitation, FICA, FUTA, and Medicare and any state employment taxes including, without limitation, SUTA.  The Notice Administrator shall promptly provide to Knorr the information and documentation (including copies of applicable IRS and state forms) reasonably requested by Knorr with respect to the payment or remittance of such employment and withholding taxes.  The Notice Administrator shall satisfy all federal, state, local, and other

23

reporting requirements (including, without limitation, any applicable reporting with respect to attorneys' fees and other costs subject to reporting), and any and all taxes, together with interest and penalties imposed thereon, and other obligations with respect to the payments or distributions from the Settlement Fund not otherwise addressed herein.

73.     The Notice Administrator shall be responsible for procuring any required tax forms from Class Members prior to making any such payments or distributions.

74.     For avoidance of doubt, Knorr, Knorr's Counsel, Named Plaintiffs, and Class Counsel shall have no liability, obligation or responsibility whatsoever for tax obligations arising from payments to any Class Member, or based on the activities and income of the QSF.  In addition, Knorr shall have no liability, obligation or responsibility whatsoever for tax obligations arising from payments to Named Plaintiffs or Class Counsel.  The QSF shall be solely responsible for its tax obligations.  Each Class Member shall be solely responsible for his/her tax obligations.  Class Counsel shall be solely responsible for their own tax obligations.

75.     The Named Plaintiffs, individually and on behalf of the Class, and Class Counsel and each of them represent and agree that they have not received and/or relied upon any advice and/or representations from Knorr or Knorr's Counsel as to taxes, including the taxability of the payments received pursuant to this Agreement.  Class Counsel represent that neither Named Plaintiffs nor Class Counsel provided any advice as to the taxability of payments received pursuant to this Agreement.

**M.     <u>Miscellaneous</u>**

76.     This Agreement does not settle or compromise any claim by Plaintiffs or any Settlement Class Member asserted in the Action against the Wabtec Defendants or any potential defendant other than the Released Parties.  All rights of any Settlement Class Member against the

24

Wabtec Defendants or any other person or entity other than the Released Parties are specifically reserved by Plaintiffs and the Settlement Class Members.

77.     Nothing in this Settlement Agreement shall be construed as an admission in any action or proceeding, of any kind whatsoever, civil, criminal, or otherwise, before any court, administrative agency, regulatory body, or any other body or authority, present or future, by Knorr, any Released Party, Class Plaintiffs, or any of them, including without limitation that Knorr or any Released Party has engaged in any conduct or practices that violate any state or federal antitrust statute or other law.

78.     The United States District Court for the Western District of Pennsylvania shall retain jurisdiction over the implementation, enforcement, and performance of this Agreement, and shall have exclusive jurisdiction over any suit, action, proceeding, or dispute arising out of or relating to this Agreement or the applicability of this Agreement, subject to the dispute resolution provisions set forth above in paragraphs 60 and 64.  This Agreement shall be governed by and interpreted according to the substantive laws of Pennsylvania without regard to its choice of law or conflict of laws principles.  Knorr submits to the jurisdiction of the Western District of Pennsylvania only for the purposes of adjudicating the implementation, enforcement, and performance of this Agreement.

79.     This Agreement constitutes the entire agreement among Plaintiffs (and the other Releasors) and Knorr (and the other Released Parties) pertaining to the settlement of the Action against Knorr only, and supersedes any and all prior and contemporaneous undertakings of Plaintiffs and Knorr in connection therewith, including the MOU executed on August 13, 2019. In entering into this Agreement, Plaintiffs and Knorr have not relied upon any representation or promise made by Plaintiffs or Knorr not contained in this Agreement.  This Agreement may be

modified or amended only by a writing executed by Plaintiffs and Knorr and approved by the Court.

80.     This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of Releasors and Released Parties.  Without limiting the generality of the foregoing: (a) each and every covenant and agreement made herein by Plaintiffs or Plaintiffs' Counsel shall be binding upon all Settlement Class Members and Releasors; and (b) each and every covenant and agreement made herein by Released Parties shall be binding upon all Released Parties.

81.     This Agreement may be executed in counterparts by Plaintiffs' Counsel and Knorr's Counsel, and an electronically-scanned (in either .pdf or .tiff format) signature will be considered an original signature for purposes of execution of this Agreement.

82.     To the extent that any timeframe set out in this Settlement Agreement is ambiguous, said ambiguity shall be resolved by applying the convention contained in Rule 6 of the Federal Rules of Civil Procedure.

83.     The headings in this Agreement are included for convenience only and shall not be deemed to constitute part of this Agreement or to affect its construction.

In the event this Agreement is not approved, or in the event that the Order and final judgment approving the settlement is entered but is reversed, modified, or vacated, the pre-settlement status of this Action (including, without limitation, any applicable tolling of any statute of limitations) shall be restored, and the Agreement shall have no effect on the rights of Plaintiffs or Knorr to prosecute or defend the pending Action in any respect, including, without limitation, the right to litigate fully the issues related to class certification, raise personal jurisdictional defenses, or any other defenses, which rights are specifically and expressly retained by Knorr.

84.     Neither Knorr nor Plaintiffs, nor any of them, shall be considered to be the drafter of this Agreement or any of its provisions for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter of this Agreement.

85.     Nothing expressed or implied in this Agreement is intended to or shall be construed to confer upon or give any person or entity other than Class Members, Releasors, Knorr, and Released Parties any right or remedy under or by reason of this Agreement.

86.     Any putative Class Member that does not opt out of the Settlement Class created pursuant to the Agreement may remain in the Class without prejudice to the right of such putative Class Member to opt out of any future settlement class or certified litigation class in the Action against non-settling defendants.

87.     All documents and other information (including deposition testimony and discovery responses) produced by the Parties in discovery shall in the future be treated as Confidential consistent with the terms of the Protective Order, without regard to any time limitations in the Protective Order.  This Confidential treatment does not apply to the following: (a) any documents filed in the Action that were publicly available as of August 13, 2019; or (b) any documents that are otherwise publicly available.  If deposition testimony is publicly available in written form (i.e., transcript excerpts), the corresponding video testimony shall also not be treated as Confidential.  At no point will Knorr be asked to reveal any privileged information.  In the event of an inadvertent disclosure of privilege information, such information shall be immediately returned to Knorr and/or destroyed under the process provided by the Protective Order.

88.     Where this Agreement requires any party to provide notice or any other communication or document to any other party, such notice, communication, or document shall be provided by electronic mail or overnight delivery to:

For the Settlement Class:

Dean M. Harvey
Lieff, Cabraser, Heimann & Bernstein, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Dharvey@lchb.com

Roberta D. Liebenberg
Fine, Kaplan and Black, R.P.C.
One South Broad Street, Suite 2300
Philadelphia, PA  19107
Rliebenberg@finekaplan.com

For the Knorr Defendants:

Mark H. Hamer
Baker McKenzie LLP
815 Connecticut Ave., N.W.
Washington, DC  20006
Mark.hamer@bakermckenzie.com

89.     Each of the undersigned signatories represents that he or she is fully authorized to enter into the terms and conditions of, and to execute, this Agreement, subject to Court approval.

1845906.4

ACCEPTED AND AGREED:

Dated:  October 14, 2019

Dean M. Harvey
Lieff, Cabraser, Heimann & Bernstein, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Tel: (415) 956-1000
Fax: (415) 956-1008

Dated: __10/14__, 2019

Roberta D. Liebenberg
Fine, Kaplan and Black, R.P.C.
One South Broad Street, Suite 2300
Philadelphia, PA  19107
Tel: (215) 567-6565
Fax: (215) 568-5872

*Interim Co-Lead Class Counsel on behalf of the proposed Settlement Class and Named Plaintiffs Stephen Baldassano, John Brand, David Escalera, Brian Lara, and Patricia Lonergan*

Dated: __Oct. 16__, 2019

Defendant Knorr-Bremse AG
By: Dr. John Korolewa          Max Huber
Its: Senior Vice President     Vice President
     Corporate Legal          Legal Truck Europe

Dated: __10/15__, 2019

Defendant New York Air Brake LLC
By: Jason Stansbury
Its: Corporate Counsel

29

1845906 4

Dated: _10/15_, 2019 _____

Defendant Knorr Brake Company LLC

By: _____

Its: _____


Dated: _____, 2019 _____

Bendix Commercial Vehicle Systems LLC

By: _____

Its: _____

30

1845906.4

Dated: _____, 2019    _____
                              Defendant Knorr Brake Company LLC
                              By: _____
                              Its: _____


Dated: OCTOBER 15, 2019       _____
                              Bendix Commercial Vehicle Systems LLC
                              By: D. Russell Hood
                              Its: Vice President, General Counsel & Secretary

30